Larry J. Cohen, Esq.
The Cohen Law Firm
P. O. Box 10056
Phoenix, AZ 85064
(602) 266-3080
(602) 265-6866
ljc@ljcohen.com
Arizona State Bar No.: 010192

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARIA BRANDON and JERRY BRANDON, wife and husband | No. CV<br>**COMPLAINT** |
| Plaintiff(s), | (Jury Trial Requested) |
| vs. | |
| DOUGLAS L. IRISH and CAROLYN S. IRISH | Related case:<br>No. CV 12-00788-PHX- FJM |
| Defendant(s). | |

Plaintiffs Maria Brandon and Jerry Brandon, through counsel, for their Complaint against Defendants, allege as follows:

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, and the United States Constitution, and the First and Fourteenth Amendments thereto.

2.      This Court has jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §1988.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the parties are residents of Maricopa County, Arizona, and the events underlying this lawsuit occurred in Maricopa County, Arizona

**<u>GENERAL LITIGATION ALLEGATIONS</u>**

4.      At all times material herein, Plaintiffs Maria Brandon ("Brandon" or "Plaintiff" or "Plaintiff Brandon") and Jerry Brandon were a married couple residing in Maricopa County, Arizona.  Between September 1979 and June 2011, Plaintiff Maria Brandon was employed to practice law in various capacities and in various offices by Maricopa County and by the Maricopa County Attorney's Office.  Plaintiff began working for Maricopa County ("the County") as a lawyer in 1979. In 1986, she moved to the Maricopa County Attorney's Office ("MCAO").

5.      Beginning on April 18, 2011 and at all pertinent times herein, Defendant Douglas L. Irish (hereinafter, "Defendant Irish" or "Irish") has been Division Chief of the newly-created Civil Services Division of the Maricopa County Attorney's Office (MCAO).  Additionally, beginning December 2010, Defendant Douglas L. Irish has been the Special Assistant in Charge of Intergovernmental Relations of the Maricopa County Attorney's Office (MCAO). Defendant Irish has authority and responsibility for managing the Civil Services Division and its employees; he has the authority and responsibility to establish policy, practices, customs, procedures, protocols and training for the Division, and he is an official and final policymaker for MCAO and for Maricopa County.

6.      Carolyn S. Irish is the spouse of Defendant Douglas L. Irish and is so designated a Defendant party solely because the wrongful conduct of Defendant Irish was engaged in for the

benefit of their marital community, thereby rendering his spouse and marital community liable for such conduct.  Plaintiffs make no claim of any liability or wrongdoing on the part of Carolyn S. Irish otherwise.

7.     At all times material herein, Rocky Armfield was the Risk Manager and/or the Risk Management Claims Manager and/or Assistant Risk Manager of Maricopa County, appointed by the Board of Supervisors with authority and responsibility for the Maricopa County Risk Management Department, its employees and agents, and with the authority and responsibility to establish policy, practices, customs, procedures, protocols and training for the Risk Management Department and an official and final policymaker for Maricopa County Risk Management Department.

8.   At all times material herein, Sandi Wilson was employed by Maricopa County as Deputy County Manager.  At various times pertinent herein simultaneously, she also held positions of Budget Director and Human Resources Director.  She was Acting County Manager from December 2008 to March 2009.  Wilson participated in the negotiations with Defendant Division Chief Douglas Irish in the merger of the MCAO Civil Services Division with the Offices of General and Special Litigation.  At all pertinent times, Rocky Armfield reported to Sandi Wilson, and when he held the position of Risk Manager, Wilson was Armfield's immediate superior.

9.     Between April 18, 2011 and June 27, 2011, Tom Liddy was the Practice Group Leader and supervisor of the newly-created Litigation Group of the MCAO Civil Services Division. As such, Liddy had authority and responsibility for managing and assigning Maricopa County

Risk Management lawsuits within his group, had the authority and responsibility to establish policy, practices, customs, procedures, protocols and training for the Litigation Group.

10.     At all material times herein, Defendant Irish was acting within the scope of his employment with Maricopa County and under color of law. Defendant Irish and his officers, agents and employees as an employee of Maricopa County and a policy maker for the MCAO Civil Services Division, engaged in wrongful conduct that allowed, caused, and/or contributed to cause the violations of Plaintiff Brandon's civil rights guaranteed by the U.S. Constitution and the First and Fourteenth Amendments thereto.

11.     At all material times herein, Defendant Irish acted at the behest of Sandi Wilson and Rocky Armfield, Defendants in *Brandon v. Liddy, et al*, CV 12-00788-PHX- FJM, and others in county management, contrary to the policy of MCAO, in taking the representation of all risk cases away from Plaintiff Brandon, and in violating Brandon's due process rights guaranteed by the Fourteenth Amendment of the U.S. Constitution to her property interest and liberty interest in her employment with the MCAO and Maricopa County by wrongfully terminating her and interfering with her employment contract with Maricopa County Attorney Bill Montgomery. Defendant Irish did this despite County Attorney Bill Montgomery's stated desire to have his office be the sole determinant of whom shall assign cases in the absence of conflicts, as held by the Arizona Court of Appeals in *Romley v. Daughton*, 241 P.3d 518 (2010), not to subject lawyers to screening in absence of a demonstrated conflict of interest, and to have a job for everyone who was affected and/or misplaced by the so-called county feuds.

**FACTUAL BASIS**

12.     In 2007, the MCAO and the County Board of Supervisors ("the Board") began arguing over various issues. As a result of these conflicts, in 2009, the Board pulled its lawsuits from then-County Attorney Andrew Thomas's civil division, and sent the cases to two new legal offices it created, one of which such offices was the Office of Special Litigation.

13.     Plaintiff moved to a position with Special Litigation in August 2009. The attorneys at Special Litigation spent the vast majority of their time defending lawsuits on behalf of Sheriff Arpaio and his office.

14.     In February 2010, plaintiff was working on lawsuits filed by a group of seven Sheriff Joe Arpaio protestors.   She requested settlement authority from the Risk Management Department in the amount of $7,500 per protestor. Plaintiff later learned that Armfield (without her knowledge) had obtained additional authority for a total amount of $100,000 per protestor and had included Randy Parraz, a political activist who had not been arrested in the same incident. The Gift Clause, article IX, §7 of the Arizona Constitution is intended to prevent government from depleting the public treasury by disbursing public funds for the private, political, or personal benefit of private individuals, corporations, or associations.

15.     A Mediation was scheduled for these lawsuits on July 6, 2010.   A few days before, plaintiff sent an e-mail to her client, the Maricopa County Sheriff's Office ("MCSO"), concerning the settlement authority.   Despite the Gift Clause, the lawsuits were settled at the Mediation over MCSO's objections for amounts ranging from $99,000 to $27,500, despite the fact that no one was put in jail and there were no claims of excessive force in the arrests.   The protestors were simply cited and released; one protestor received a ticket in the mail.

16.     *The Arizona Republic,* a local newspaper, obtained a copy of Plaintiff Brandon's July 2, 2010 confidential, attorney/client email that was addressed to MCSO Chief Hendershott. It is unknown how they obtained this email. Neither Plaintiff Brandon nor anyone at Special Litigation gave them the email.  *The Republic* published a front page article regarding the settlement amount of $424,700 for seven protestors, six of whom were booked and released, and had no claims of excessive force or physical injuries.

17.     Reporters Craig Harris and Yvonne Wingett wrote in the July 9, 2010 article in *The Arizona Republic*, in pertinent part:

> . . . Records obtained by *The Republic* show the county intended to pay much less.  Maria Brandon is an attorney who works in the county's office of special -litigation services. She was appointed to represent the Sheriff's Office.
> In memos sent to the Sheriff's Office days before the July 6 mediation hearing, Brandon stated that the county intended to start discussions with an offer of $2000 per person and had no intention of giving away a lot of money.  She indicated she received approval from the county trust in February to pay only up to $7500 per plaintiff. The county increased the payouts because, according to one of Brandon's memos. . . . Assistant Risk Manager Rocky Armfield later went to the trust without her knowledge and received authority to pay up to $100,000 per plaintiff. "I don't know why they did what they did, and I'm sure they have their reasons," Brandon said in an interview. . . .

18.     Armfield immediately retaliated by pulling from Plaintiff Brandon cases that had been assigned to her for representation of persons whose interests were protected by the County Risk Management office (risk cases) . Later that year, Armfield refused to send any risk cases requiring representation of Sheriff Arpaio or the County Attorney to the Office of Special Litigation.

19.     In November 2010, a new County Attorney, Bill Montgomery, was elected.   He announced plans to fold the two legal offices of General and Special Litigation created by the Board into the newly-created MCAO Civil Services Division.   Special Litigation was shut down April 15, 2011 and the employees and case files were moved back to the MCAO Civil Services Division (formerly, the MCAO Civil Division.)

20.     Between December 2010 and April 2011, negotiations were held to work out the details through which attorneys that had been working in General and Special litigation would be brought to MCAO Civil.   Defendant Irish was part of the negotiating team on behalf of MCAO as the MCAO Special Assistant in Charge of Intergovernmental Relations.   The county members of the negotiation team included Rebekah Francis, an attorney who was hired by Sandi Wilson in February 2011 to a newly-created position. Francis reported to Sandi Wilson.

21.     Certain of these attorneys were objectionable to some members of the Maricopa County Board of Supervisors, Sandi Wilson, and Rocky Armfield for person, political or other reasons unrelated to the quality of their work and county members of the negotiation team demanded that those certain attorneys not be allowed to work on risk cases or make presentations to the Board concerning litigation or other matters.

22.     Plaintiff Maria Brandon was among those lawyers whom some members of the Maricopa County Board of Supervisors, Sandi Wilson, and Rocky Armfield found objectionable and were deemed unacceptable to work on risk cases or make presentations to the Board concerning litigation cases.

23.     Defendant Irish met separately with Rebekah Francis to specifically negotiate how attorneys on that list, including Maria Brandon, would be dealt with.

-7-

24.     Defendant Irish testified in his May 29, 2013 deposition that he agreed, prior to April 18, 2011, the MCAO Civil Services Division would abide by the wishes of some members of the Maricopa County Board of Supervisors, Sandi Wilson, and Rocky Armfield by excluding certain attorneys from working on risk cases or making presentations to the Board concerning litigation cases.

25.     Prior to April 18, 2011, Defendant Irish knew that Plaintiff Brandon was an attorney that some members of the Maricopa County Board of Supervisors, Sandi Wilson, and Rocky Armfield did not want to work on risk cases or make presentations to the Board concerning litigation cases

26.     Prior to April 18, 2011, Defendant Irish agreed expressly and specifically to abide by the wishes of the county members of the negotiating team regarding Plaintiff Brandon, and so Defendant Irish agreed that Plaintiff Brandon would be screened so that she would not work on risk cases or make presentations to the Board concerning litigation cases.

27.     Despite this knowledge and his agreement, Defendant Irish either placed Plaintiff Brandon or allowed her to be placed in the very "litigation practice group" whose overwhelmingly primary purpose was to handle and try risk cases on behalf of county risk management and the Board.

28.     Defendant Irish did not notify Plaintiff Brandon at any time before, during, or after she was offered a position in the Civil Services Division at $126,000 per year that he had previously agreed that she would not be permitted to work on risk cases or make presentations to the Board concerning litigation cases

29.    Further, as part of the negotiations, Defendant Irish agreed to the altered salary structure of the returning attorneys which resulted in the significant reduction of salaries of certain attorneys going from Special Litigation and to the Civil Services Division, including among them Plaintiff Brandon.

30.    Further, Defendant Irish agreed that attorneys coming from General and Special litigation to the Civil Services Division would be placed on "probation" despite the fact that some from among those attorneys, including Plaintiff Brandon, had worked for many years for the MCAO.

31.    MCAO did not utilize one of the two merit system-approved and existing forms of probation, "Initial Probation" or "Promotional Probation." Rather MCAO unilaterally and without lawful authority modified "Initial Probation" to such an extent that it was significantly different from the merit system-approved and existing form of "Initial Probation."  From the standpoint of the merit system-approved rules, it was "Initial Probation" in name only in that MCAO conferred many benefits to the attorneys going from Special and General Litigation to the Civil Services Division that are not available to newly hired attorneys, but imposed on them the same burden on newly hired attorneys of being at risk for termination without the right of appeal or otherwise challenging the termination.

    A.    Unlike other incoming employees who were truly new employees, and in disregard of the approved merit system rules, MCAO changed the term of "Initial Probation" from one year to six months

    B.    Unlike other incoming employees who were truly new employees, permitted the attorneys from General and Special Litigation to keep their accrued vacation and FMLA leave;

C.      Unlike other incoming employees who were truly new employees MCAO allowed attorneys from General and Special Litigation to attend paid seminars at full salary;

D.      Unlike other incoming employees who were truly new employees MCAO allowed employees to take vacations and FMLA leave.

E.      Unlike other incoming employees who were truly new employees, MCAO permitted attorneys to transfer to another department during their term of "Initial Probation."

F.      Yet like all other incoming employees who were truly new employees, MCAO attempted to apply an approved merit system rule that permitted termination of an "Initial Probation" hire without any right to appeal or otherwise challenge the termination decision.

32.     Defendant Irish represented to attorneys who worked in General and Special Litigation and were to be offered a position with the MCAO that their status as a person on "probation" was a mere formality so as to avoid a precedent being established in the future for new hires.

33.     For those attorneys coming from General and Special to the MCAO who had never worked at the MCAO, probation afforded an opportunity to evaluate the quality of their work and their amenability for employment in the MCAO in relation to the expectations of the MCAO, but probation was not needed to provide any such opportunity to evaluate the quality of work or amenability for employment in the MCAO of those attorneys who had previously worked in the MCAO.

34.     Returning staff, legal assistants, and secretaries were not placed on this "probation" even if they had never worked for MCAO prior to April 18, 2011, because the county had created their positions as classified positions, even at the Office of General and Special Litigation.  It was only the attorneys coming from General and Special to the MCAO who were placed in the

1  unique position of having to forgo merit protection when the attorneys moved from the Offices
2  of General and Special Litigation to the MCAO.

3  35.   Defendant Irish was instrumental in placing on probation Maria Brandon, a career public
4
5  sector employee who had worked for several decades at MCAO and who had completed
6  probation at MCAO years before.

7  36.   Defendant Irish was instrumental in creating and implementing this new form of
8  "probation" to move attorneys from the Special and General Litigation offices to the MCAO,
9
10 without applying to the Maricopa County Merit Commission, the Board of Supervisors or
11 County Human Resources to enact an official rule change or an amendment to the Maricopa
12 County Merit Rules to establish the method of probation created and implemented.

13 37.   County management was willing to waive the requirement that returning attorneys be
14
15 placed on "probation" in part because there were concerns that attorneys from General
16 Litigation, such as Mary Cronin (Director of Litigation at General) and Randall Garcyznski
17 (Senior Litigation Counsel at General), who had been strong supporters of the creation of the
18 Offices of General and Special Litigation, might not survive a probationary period due to
19
20 retaliation from political opponents at MCAO.  In point of fact, both Mary Cronin and Randall
21 Garcyznski were released from probation by Defendant Irish in June 2011.

22 38.   Armfield and Wilson insisted that Plaintiff Maria Brandon and Lee White, both line
23
24 attorneys at the Office of Special Litigation, not be assigned risk cases or trials once they
25 returned to the MCAO.

26 39.    On April 18, 2011, Plaintiff Maria Brandon was offered the position of Senior Attorney
27 in the MCAO Civil Services by County Attorney Bill Montgomery. All three line-attorneys in

Special Litigation had their salaries significantly reduced under the new salary structure. Attorney S. Lee White's salary was reduced by $29,640 (about a 30% reduction); K. Peter Muthig's salary was reduced by $17,971 and Plaintiff Brandon's salary was reduced by $7737.

40.     The letter offering Plaintiff her position notified her that a condition of her employment was that she would be hired on probation, but did not specify the nature of terms of that probation.

41.     Sandi Wilson, Rocky Armfield and others in county management met with Defendant Irish several times and specifically discussed the employment of Plaintiff Brandon by name.

42.     Wilson, Armfield and others in county management, told Defendant Irish they were upset with Brandon because of the 2010 newspaper article.

43.     Sandi Wilson told Defendant Irish she and others in county management were also upset with Brandon because of legal advice Brandon had given thirteen years earlier, involving the "pre-AHCCCS" cases settlement in 1998.   Wilson opposed the settlement in 1998 favored by Plaintiff Brandon of about 12 cents on the dollar, and had been central in blocking settlement of the few remaining claims until 2011, when Sandi Wilson settled this remnant of claims at about 15 cents on the dollar.

44.     Defendant Irish told Wilson and Armfield the pre-AHCCCS case settlement was "ancient history," and he did not think the quotes attributed to Brandon in the 2010 newspaper article showed that Brandon had done anything wrong.

45.     Nevertheless, Defendant Irish and Tom Liddy removed Plaintiff Brandon from all risk cases on June 6, 2011, despite their decision being in direct conflict with County Attorney Bill

Montgomery's policy not to permit others outside the MCAO dictate which MCAO attorneys are assigned what cases, including risk management cases.

46.    On June 8, 2011, plaintiff was physically assaulted by her legal assistant Jackie Garcia. Tom Liddy was not in his office at the time, so plaintiff reported the assault to Doug Irish and to Brandon Newton who was seated in Irish's office. Defendant Irish asked Brandon Newton (hereinafter, Newton or B. Newton) a human resources attorney for MCAO, for the proper procedures to follow up and Newton told him to send everyone to MCAO Investigations for a formal investigation, which was initiated immediately.

47.    Plaintiff Brandon was sent to Detective Karen Ashley at 10:45 am on June 8, 2011, for an interview that was tape-recorded.  Jackie Garcia was interviewed immediately thereafter. An eyewitness, Nadxiely Valero, was interviewed by Detective Ashley at 12:30 pm on Thursday, June 9, 2011.  Detective Ashley prepared her report, dated June 11, 2011, and titled "The Garcia Incident."

48.    Defendant Irish met with Tom Liddy on Wednesday, June 8, 2011, to discuss terminating Brandon.  By the next day, both Tom Liddy and Defendant Irish had decided to terminate Brandon without either of them reading Detective Ashley's Report, without interviewing any of the witnesses to the interaction between Plaintiff Maria Brandon and Jackie Garcia, and without listening to any of the recorded interviews. This is in direct conflict with County Attorney Bill Montgomery's publically stated commitment to protect the rights of all victims and their families.

49.    Brandon was released from employment by Defendant Irish, and by Tom Liddy, on June 10, 2011.

50.     County Attorney Montgomery and Plaintiff entered into a valid employment contract on April 18, 2011 after Plaintiff Brandon completed an online application for the position at the MCAO, Civil Services Division and interviewed with Chief Deputy Mark Faull as she was requested to do. On April 18, 2011, Brandon was given a letter offering her the position of Senior Attorney with the salary of more than $126,000 annually.  She began working and was paid accordingly up to and through June 27, 2011.  The letter was on County Attorney Bill Montgomery's letterhead.  She was administered an oath to support the U.S. Constitution by employees of the Maricopa County Attorney's Office.  She was then given an official county attorney badge and ID card that permitted her to enter areas secured by the Maricopa County Attorney's Office.

51.     The week of April 18, 2011, Liddy, now "Practice Group Leader" of the litigation group, told Plaintiff Brandon that Sandi Wilson and Rocky Armfield were demanding risk cases not be assigned to her, and that she be fired due to the newspaper article about the protest cases that had appeared in *The Arizona Republic* in July 2010.

52.     Liddy said he attended one meeting alone with Assistant County Manager/Budget Director/Interim HR Director Sandi Wilson with no written agenda, and she began the meeting by asking, "What are you going to do about Maria Brandon?"  Liddy likened the atmosphere to the post-Civil War, Reconstruction period when there were lynchings. On May 19, 2011, Liddy told her that Sandi Wilson and Rocky Armfield were relentless in their demands that she be taken off risk cases and fired.

53.     On Monday, June 6, 2011 at 5:30 pm, Liddy told Brandon that, in light of the pressure from Wilson and Armfield, County Attorney Montgomery had decided "not to file a lawsuit

-14-

over her." Plaintiff understood this to mean their intention was to appease Wilson and Armfield by reassigning all her risk cases or terminating her.   Liddy told her they were taking her off risk cases and asked her for a list of the risk cases to which she was still assigned so they could be reassigned.   This was the vast majority of her case load. She had only a few minor assignments that were not risk cases.

54.   The county feud created an "us-versus-them" climate, and that climate was intensified by Sandi Wilson and Rocky Armfield, and their retaliation and slander against the attorneys in Special Litigation, including Brandon, whom they perceived as against them merely because they were conflict counsel assigned to represent the Sheriff, the County Attorney and their offices. This damaged Brandon's professional and personal reputation and constituted a hostile work environment and workplace bullying which led to repeated infringements on Plaintiff Brandon's personal dignity.

55.   Sandi Wilson, and Rocky Armfield, and Tom Liddy, both before and after Brandon's dismissal, intentionally harmed Plaintiff's professional reputation by demanding that she be taken off all her risk cases and defaming, slandering, and spreading untruths about her.

56.   Defendant Irish and Tom Liddy intentionally harmed Plaintiff's professional reputation by acting as the agent of Wilson and Armfield and acceding to their political demands, and by defaming, slandering, spreading lies and untruths about her and violating her privacy rights.

57.   By telling others that they were taking Brandon off all risk cases, Defendant Irish and Wilson, Armfield and Liddy created the inference that Brandon had done something wrong in her work and that she was not competent to handle these cases, despite the fact that she had

won most of the many trials she had conducted for risk management and had a long history of successful settlements and professional work on risk cases.

58.    Wilson and Armfield also spread the information that she was being removed from risk cases to other employees in MCAO.  Legal assistant Jackie Garcia told Maria Brandon just prior to assaulting her that "everyone knew [Brandon was] being taken off risk cases."

59.    In this hostile and retaliatory atmosphere created by Defendant Irish, Tom Liddy, Wilson, and Armfield, an MCAO legal assistant who was assigned to do Brandon's work, Jackie Garcia, felt sufficiently empowered to assault Plaintiff Brandon by physically grabbing Plaintiff's arm and yelling threats at her while pointing her finger in Plaintiff's face. This assault occurred at about 8:30 am on Wednesday, June 8, 2011 in the 10th floor hallway of the MCAO Civil Services Division, within hearing distance of three other employees and within eyesight of Nadxiely Valero. This assault occurred when Plaintiff asked Garcia who told her that Brandon was being taken off risk cases.  Jackie Garcia refused to answer but later told Tom Liddy that it was Randall Garczynski who told her that Brandon would no longer be doing risk cases.

60.  As a result of this incident, Jackie Garcia was suspended initially for five days without pay, which suspension was subsequently reduced to three days; and Randall Garczynski was disciplined for fomenting the hostility, being terminated by MCAO two weeks later.

61.  Brandon went to Defendant Irish's office and reported that Jackie Garcia had assaulted her. Defendant Irish looked at Deputy County Attorney B. Newton who said the proper procedure was to have MCAO investigations department conduct an immediate investigation and prepare a report of the incident.  Irish told plaintiff to leave and get some coffee while he set up the

interviews.   Plaintiff Brandon went for coffee with a coworker.  Upon her return, she received a telephone call from Detective Ashley who asked her to immediately report to MCAO investigations at 301 W. Jefferson, where she was interviewed and tape-recorded by Detective Karen Ashley.  Detective Ashley informed Brandon that she had already interviewed several witnesses.  Jackie Garcia was interviewed and tape-recorded immediately after Brandon.

62.  Defendant Irish testified in a May 29, 2013 deposition, that he wanted Plaintiff Brandon out of the office, and he recommended that she be terminated to Chief Deputy Mark Faull, the Chief Deputy County Attorney, responsible for the overall direction and management of office administration and operations; in charge of planning and implementing Office-wide policies and programs; responsible to oversee day-to-day activities; and providing recommendations on a broad range of high-level legislative, budgetary, personnel and operational issues.

63. Acting on the recommendation of Defendant Irish, B. Newton drafted a letter of termination for Mark Faull's signature and combed through Plaintiff Brandon's personnel file for any information that would support the firing.

64.  Tom Liddy testified he decided on Thursday, June 9th, before noon or in the afternoon, to recommend to Defendant Irish that Plaintiff Brandon be terminated.  Liddy testified he made this recommendation after a meeting with Defendant Irish on Wednesday, June 8th, and after discussing Irish's analysis as to what should happen to Ms. Brandon.

65. Liddy and Defendant Irish made the decision to fire Plaintiff Maria Brandon even before an eyewitness to the incident, Nadxiely Valero, was interviewed by MCAO Detective Ashley. Ms. Valero was not interviewed by MCSO investigations until 12:30 pm on Thursday, June 9, 2011, the day after the incident, and after the decision to terminate was made.  The report, entitled

"The Garcia Incident," prepared by MCSO, was dated Saturday, June 11, 2011, the day after Ms. Brandon's employment was terminated.

66. Defendant Irish testified he decided to fire plaintiff Brandon without listening to the interview tapes, which clearly show that Jackie Garcia was the aggressor and assaulted Plaintiff Brandon, by grabbing and threatening her.  In the words of Ms. Valero:  ". . . Maria was pretty like calmed and she was in shock and she was like oh, she was just like quiet and I saw that she was kind of like upset, I think she almost like wanted to cry like she didn't know what to do." During the interview, Detective Ashley (KA) asked Nadxiely Valero (NV):

   KA: "Did, so who would you say was the, was the aggressive one?

   NV: Jackie.

   KA: Jackie was the aggressive one, okay. Did, did you see her get in Maria's face?

   NV: Yeah she was like really mad and um Maria she was just like calm and in shock and it was like calm down you know don't touch me you know and um Jackie was the one saying she like she was screaming and she was cussing, she was like mad and I don't know I was just like oh my God, I can't, I couldn't believe she was acting like that especially that we were in the office."

67.  Moreover, Defendant Irish decided to fire Plaintiff Brandon without speaking with Detective Karen Ashley and without waiting for her report, handing Plaintiff Maria Brandon the termination letter on Friday, June 10, 2011.

68.  Defendant Irish testified he first read the MCAO Detective Ashley's report nearly two years after the firing on May 28, 2013, the day before his deposition in this matter, which was taken on May 29, 2013.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

69.    Defendant Irish directed his HR attorney, B. Newton, to search plaintiff Brandon's personnel file to seek information that could support his decision to terminate Plaintiff Maria Brandon despite the fact that neither Defendant Irish nor anyone else at MCAO had seen anything in Plaintiff's personnel file that would keep them from hiring her and offering her a $126,000 position just six weeks earlier.

70.    On Friday, June 10, 2011 at about 1:30 pm, Defendant Irish and Tom Liddy fired Brandon.    Defendant Irish who held the title of "Special Assistant in Charge of Intergovernmental Relations," did this in response to pressure from County Risk Manager Rocky Armfield and Deputy County Manager Sandi Wilson and others in county government who were adamant for political and other reasons that Plaintiff Brandon not be their attorney.

71.    Liddy testified in his April 1, 2013 deposition that it was Defendant Irish who made the decision to fire Plaintiff Maria Brandon.  Liddy, meanwhile said it was he and only he who made the decision to fire Brandon, both in a litigation group meeting that was held just after Brandon was handed her dismissal letter by Liddy and Irish, and to individual employees afterward.  He then made false statements to his employees about Brandon, revealing and mischaracterizing details from Brandon's twenty-five year HR file despite the fact that Brandon had been hired just six weeks prior for a $126,000 a year position with that same personnel file, and rehired a total of four times in the previous three years without a break in employment with that same personnel file.

72.    The June 10, 2011 termination letter Defendant Irish handed Plaintiff Maria Brandon cited to Merit Rules 7.03(B) and 7.03(C) for Promotional Probation as the legal ground for the

termination.  Through undersigned counsel, Plaintiff responded by requesting an appeal under the Merit Rules as they had not followed the procedure provided in Rule 7.03(C ) even though they cited that Rule. The request for appeal was denied.

73.   On June 27, 2011, Plaintiff Brandon received a second dismissal letter stating she was being reinstated for two weeks and then released from probation again under a different Merit Rule, 7.02(B), which pertained to Initial Probation, even though she had been working continually for Maricopa County for about 33 years.  Through undersigned counsel, Plaintiff responded by requesting an appeal under the Merit Rules.   The request for appeal was denied.

74.   In fact, Plaintiff Maria Brandon had been promoted into the position she held on June 10, 2011 because the range of pay possible for the position into which Plaintiff was hired at MCAO, was higher than the range of pay for the position Plaintiff Brandon had held previously at MCAO.

75.   Despite her 33 years of public service, Plaintiff Brandon lost her work, her annual salary of $126,000, her family's medical insurance, and her reputation. Prior to June 10, 2011, Plaintiff had never been dismissed or asked to leave a job in her life.

76.   Defendant Irish had knowledge of the employment contract between County Attorney Bill Montgomery and Plaintiff Maria Brandon, yet he testified he assured Sandi Wilson and Rocky Armfield prior to the merger of General, Special and the Civil Division, prior to April 18, 2011, prior to the date Maria Brandon was offered and accepted her position as a Senior Attorney in the Litigation Group of the Civil Services Division, that Maria Brandon would not be representing Maricopa County or the Board of Supervisors.

77.     Sandi Wilson and Rocky Armfield pursued a campaign designed to induce a breach or disruption of the employment relationship between Montgomery and Plaintiff.  After meeting with Sandi Wilson and Rocky Armfield, Defendant Irish acted as their agent in disrupting the employment contract between Plaintiff Brandon and County Attorney Bill Montgomery.

78.     The efforts made by those in county management to target certain attorneys during the return of attorneys from General and Special Litigation to MCAO was challenged by County Attorney Montgomery, who made clear publicly that he would provide a job for all the attorneys in General and Special Litigation, and further intended that case assignments be made by MCAO without interference by county management; nonetheless Armfield and Wilson concentrated their efforts on persuading Defendant Irish and later Plaintiff Brandon's practice group leader Tom Liddy to remove Plaintiff Brandon from all risk cases and any cases representing the Board.

79.     Defendant Irish was amenable to the political pressure being exerted by Armfield, Wilson and others in county government in restricting the scope and range of services Plaintiff Maria Brandon could perform, despite County Attorney Montgomery's policy otherwise, and he chose to use the assault on Plaintiff Brandon as an excuse to terminate her.  Irish testified in his May 29, 2013 deposition that he just did not want Maria Brandon in the office. His determination to get rid of Plaintiff Maria Brandon is demonstrated by him making the termination recommendation even before the eyewitness to the assault incident was interviewed by the Maricopa County Attorney's Office Investigations, before Investigations prepared their report, and without interviewing Maria Brandon or anyone else involved in the incident.  He

1   made this unconsidered decision to terminate Plaintiff Maria Brandon within twenty-four hours

2   of the incident.

3

4

5                                    **COUNT I**

6

   **Violation of Fourteenth Amendment Rights of Due Process under 42 U.S.C.§1983:**
7   **Deprivation of Property Interest and Liberty Interest in Employment**

8   80.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the

9   preceding paragraphs of the Complaint as if set forth fully herein.

10  81.    At all times material herein, Defendant Douglas Irish was acting under color of law and

11  in the scope of his employment as an official of the Maricopa County Attorney's Office.

12
   82.    Pursuant to the Civil Rights Act, 42 U.S.C.§1983, the wrongful conduct of Defendant
13
   alleged in this Complaint violated Plaintiff Brandon's Fourteenth Amendment rights to due
14
   process of law guaranteed to all citizens of the United States under the Fourteenth Amendment.
15
   The wrongful conduct of Defendant was pursued with an unconstitutional motive and malice
16
   and without equal protection or due process in an attempt to circumvent the county attorney's
17
   own Merit Commission Rules and/or fundamental guarantees of fairness, and deprive Plaintiff
18
   Brandon of her liberty interest and property interest in her employment and her 33 year career
19
   with Maricopa County, which included continually working for MCAO (or Special Litigation,
20
   as reconstituted) during the preceding 25 years.
21
   83.    The wrongful conduct included circumventing the Maricopa County Merit System by
22
   placing attorneys rehired from the Maricopa County Offices of General and Special Litigation
23

24  in a newly-created form of "probation" where they were denied merit protection, despite many

25

26

27

                                       -22-

years of service, but were allowed the other benefits of long term employment such as retaining their accrued vacation and FMLA leave time. This "probation" placed them in a different, unequal and fundamentally unfair position compared to MCAO employees that had not worked in the Offices of General and Special Litigation, or who were support staff or legal assistants who were not placed on this "probation." This structure allowed political appointees to target individual attorneys for solely political purposes despite their years of career government service. It allowed the targeting of the career line attorneys who had been assigned to the Office of Special Litigation and the termination of Plaintiff Brandon's employment contract with County Attorney Bill Montgomery.

84.     The unconstitutional motives included but were not limited to Sandi Wilson's, Rocky Armfield's and possibly others in county government's decision to retaliate against Brandon for the July 9, 2010 newspaper article in which she was quoted, which they may have felt held them in an unfavorable light.   Defendant Irish acted as their agent in furtherance of their unconstitutional scheme of retaliation, and removed all risk cases from Brandon's representation and interfered with her employment contract by arranging to terminate her employment.   An agent was necessary because the removal of cases and termination of Brandon had to be done by the Maricopa County Attorney's Office rather than Maricopa County.

85.     Maricopa County Attorney Bill Montgomery and Plaintiff entered into a valid employment contract on April 18, 2011, after Plaintiff Brandon applied for a position at the MCAO, Civil Services Division, and was offered a position at the pay of more than $126,000

1
2
annually, and began working on April 18, 2011 and was paid accordingly up to and through June 27, 2011.

3
4
5
6
7
8
86.     Defendant Irish had knowledge of this employment contract, and yet he assured Sandi Wilson and Rocky Armfield prior to the merger of General, Special and the Civil Division, and prior to April 18, 2011 when Maria Brandon was offered and accepted the position as Senior Attorney in the Litigation Group of the Civil Services Division, that Maria Brandon would not be representing Maricopa County or the Board of Supervisors.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
87.      Sandi Wilson and Rocky Armfield pursued a campaign designed to induce a disruption or breach of the contractual relationship between Montgomery and Plaintiff.  After meeting with Sandi Wilson and Rocky Armfield, Defendant Irish acted as their agent in this regard to further their efforts at disrupting the employment contract between Plaintiff Brandon and County Attorney Bill Montgomery.  Although this effort was unsuccessful with County Attorney Montgomery, who made clear publicly that he would provide a job for all the attorneys in General and Special Litigation, Armfield and Wilson concentrated their efforts on persuading first Defendant Irish and later Plaintiff Brandon's practice group leader Tom Liddy to remove Plaintiff Brandon from all risk cases and any cases representing the Board of Supervisors, which involves nearly all litigation in the Litigation group of the Civil Services Division where Maria Brandon was hired and assigned.

23
24
25
26
27
88.     Defendant Irish was amenable to the political pressure of Sandi Wilson, Rocky Armfield, and others in county management, and chose to utilize the assault on Plaintiff Brandon as an excuse to rush to terminate her employment within twenty-four hours of the

incident without adequately considering or investigating the matter, denying her due process of law.

89.     As a direct and proximate result of Defendant's actions, which interfered with Plaintiff's contractual relations with the County Attorney Bill Montgomery and Plaintiff's employment contract with the Maricopa County Attorney's Office, Defendant Irish deprived Plaintiff of due process of law and violated her property interest and liberty interest in her employment contract guaranteed under the Fourteenth Amendment of the U.S. Constitution.

90.     In order to achieve these unconstitutional ends, Defendant Irish denied plaintiff's due process rights guaranteed by the Fourteenth Amendment, in contriving a sudden and hurried reason to terminate her employment just two days after taking her cases away from her, without performing the regular procedures that would be followed ordinarily by management in MCAO.  He first directed the participants in the June 8, 2011 incident be interviewed by MCAO Investigations, but then he rushed to judgment without waiting for the report to be concluded and without listening to the interview tapes of the incident.  He did not interview or talk to Plaintiff Brandon other than to tell her to go get some coffee after she reported she had been assaulted. Within twenty-four hours of the incident, he made a decision to terminate Plaintiff Brandon, before the eyewitness Nadxiely Valero had been interviewed by MCAO on June 9, 2011 at 12:30 pm.  There was no reason for his sudden rush to judgment and Irish's disregard of established procedure and protocol other than his political desire to get rid of a career 33-year employee and gain favor with Sandi Wilson, Rocky Armfield and certain others in county management.  This violation of due process is unconstitutional and a deprivation of Plaintiff's property and liberty interest in her employment.

-25-

91.     As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff Brandon's constitutional rights were violated and she was injured and suffered harm.

92.     The wrongful conduct of Defendant as alleged in this Complaint was undertaken with malice and/or improper and unconstitutional motives in an attempt to interfere with conduct protected by the U.S. Constitution and to treat her differently than others similarly situated. The acts of Defendant were under color of state law and were malicious and in reckless disregard of violating Plaintiff Brandon's constitutional rights, and were intended to violate her due process rights guaranteed by the Fourteenth Amendment.

93.     As a result punitive damages in an amount to be determined by a jury should be awarded against Defendant Douglas Irish to punish him for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT II

### Violation of First Amendment Rights of Freedom Of Speech under 42 U.S.C.§1983

94.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

95.     At all times material herein, the Defendant was acting under color of law and in the scope of his employment as an official of the Maricopa County Attorney's Office.

96.     Pursuant to the Civil Rights Act, 42 U.S.C.§1983, the wrongful conduct of Defendant alleged in this Complaint violated Plaintiff Brandon's First Amendment rights to free speech and freedom of the press and the privileges and immunities guaranteed to all citizens of the United States under the Fourteenth Amendment. The wrongful conduct of Defendant acting on his own, and as agent for Sandi Wilson, Rocky Armfield, and perhaps others in county

management, was pursued with an unconstitutional motive and malice and without equal protection or due process in an attempt to chill the free speech of Plaintiff Brandon and other county employees, and to intimidate, retaliate, harass and exact revenge for her involvement in the newspaper article published in *The Arizona Republic* on July 9, 2010 by Craig Harris and Yvonne Wingett-Sanchez, that exposed possible violations of the Gift Clause, and to have a chilling effect on all other county employees to keep them away from the press, reporters, and the media and indirectly, the public, as well as to chill  the free speech of all government lawyers in writing opinions and evaluations of cases and the law to their clients in confidential attorney-client memorandum.

97.    As a direct and proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff Brandon's constitutional rights were violated and she was injured and suffered harm.

98.    The wrongful conduct of Defendant Irish and Rocky Armfield and Sandi Wilson as alleged in this Complaint was undertaken with malice and/or improper and unconstitutional motives in an attempt to interfere with conduct protected by the U.S. Constitution and to treat Brandon differently than others similarly situated. The acts of Defendant Irish and of Wilson, Armfield, and Liddy were under color of state law and were malicious and in reckless disregard of violating Plaintiff Brandon's constitutional rights, and were intended to have a chilling effect on her speech rights guaranteed by the First Amendment as well as on the freedom of speech rights of other county and Maricopa County Attorney's Office employees.

99.    As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendant Irish to punish him for wrongdoing and to prevent him and others from acting in a similar manner in the future.

1

### .JURY TRIAL

2

100.    Plaintiffs hereby request a trial by jury.

3

### PRAYER FOR RELIEF

4

101.    WHEREFORE, Plaintiffs pray for damages for judgment against Defendant as follows:

5

6

       (a)    General Litigation damages in an amount to be proven at trial;

7

       (b)    Punitive damages in an amount deemed just and reasonable against the Defendant

8

              pursuant to 42 U.S.C. §1983;

9

       (c)    Costs and attorneys' fees against Defendant as to the causes of action alleged

10

11

              under the Constitution and laws of the United States, pursuant to 42 U.S.C.§1988;

12

       (d)    The costs of litigation;

13

       (e)    All remedies provided by 42 U.S.C. §1983;

14

       (f)    Such other relief which may seem just and reasonable under the circumstances.

15

16

    RESPECTFULLY SUBMITTED this  6th day of June 2013.

17

18

              THE COHEN LAW FIRM

19

                        /s/ Larry J. Cohen
              By:_____

20

                        Larry J. Cohen, Esq.

21

                        P.O. Box 10056
                        Phoenix, Arizona 85064

22

23

                        Attorney for Plaintiffs

24

25

26

27